· SOUTHERN RAILWAY CO. *v.* WATERS & CO.

1. When there are several connecting railroads of different companies, and the goods are intended to be transported over more than one, each company is responsible to its own terminus before delivery to the connecting railroad, and the last company which received the goods as "in good order" is responsible to the consignee for any damage open or concealed done to the goods, and the companies must settle among themselves the question of ultimate liability.

2. If a railroad company receives from another railroad company goods to be transported, and receipts for them as "in good order," the company so receiving and receipting is concluded by the receipt from setting up as against the consignee that the goods were in fact not in good order when received.

3. Goods received by a railroad company from a connecting line, to be transported over its own road, are, in the absence of a statement to the contrary in a receipt for the goods, presumed to have been received as "in good order," but this presumption may be rebutted by proof showing that no receipt was given, and that the goods were in fact not in good order when received.

4. A railroad company receiving goods from a connecting line may protect itself from the conclusive presumption arising from a receipt expressly stating that the goods were "in good order," or from a rebuttable presumption arising from a failure to state the condition of the goods in a receipt, by a receipt setting forth an exception as to the condition of the goods. Any statement in the receipt negativing that the goods when received were in good order will relieve the company from a presumption that they were in such condition.

5. The judge erred in the charge excepted to, and in the refusal to charge as requested; and the verdict was unsupported by the evidence.

Submitted March 3,—Decided May 16, 1906.

Appeal. Before Judge Pendleton. Fulton superior court. July 3, 1905.

Waters & Company sued the Southern Railway Company in a justice's court. The cause of action set forth was, in substance: On or about March 1, 1904, plaintiff purchased of Hodges & Sons, of Manassas, Ga., 11 barrels of syrup, which were delivered to plaintiff by defendant in Atlanta, Ga., on March 21, 1904. When delivered, the goods were in a damaged and bad condition, being fermented and sour, and the hoops loose on the barrels; the goods having been received by the railway company in good order, and damaged as aforesaid. The time consumed in conveying the goods from Manassas to Atlanta was unreasonable, and plaintiff was thereby damaged. There was also set forth a cause of action under the "tracing act," but this was stricken at the trial. The defend-

ant filed an answer setting up a general denial of liability. The case was carried by appeal to the superior court, where the trial resulted in a verdict in favor of the plaintiff for the full amount sued for. The defendant filed a motion for a new trial, upon the general grounds, and subsequently an amendment was added containing two special grounds. Error was assigned upon the charge of the court to the effect that if the Southern Railway Company, as the last connecting carrier, only showed that it excepted to the condition of the syrup to the Seaboard Air-Line Railway on the condition of the barrels, and not on the ground that it was sour and fermented, that exception would not rebut the presumption that it was sour and fermented when received by it. The other assignment of error was upon the refusal of the judge to charge that the plaintiff can not recover on that portion of his cause of action which attempted to set forth liability on the part of the railway company for receipting for the goods as "in good condition," or for failing to receipt at all, if the jury believe that the company made exception on the receipt of the goods from the connecting line. The motion was overruled, and the defendant excepted.

The material portions of the evidence were, in substance: A bill of lading issued by the Seaboard Air-Line Railway at Manassas, Ga:, dated March 1, 1904, for eleven and a half barrels of syrup, weight 5,275 pounds, received as in apparent good order. An expense bill, dated Atlanta, Ga., March 17, 1904, issued to the plaintiffs for eleven and a half barrels of syrup, stating "all leaking badly," and marked "paid," March 21, 1904. The invoice of Hodges & Sons showing the number of barrels and number of pounds in the bill of lading at thirty-five cents, $153.85, dated March 1, 1904. A witness for plaintiff testified, that during March, 1904, syrup of the best quality was worth 35 to 40 cents per gallon, and the usual time consumed in the transportation of freight between Manassas and Atlanta was from thirty-six to forty-eight hours. One of the plaintiffs testified, that his firm had purchased the syrup from Hodges & Sons at the invoice price of thirty-five cents per gallon, and that it was delivered by the Southern Railway Company in Atlanta on March 21, 1904. At the time of delivery all of the barrels were leaking, and the syrup when received was only fit for reboiling. He sold it as early as possible for 15 cents per gallon, which was all that it was worth, the syrup

being sour and fermented. The fermentation would begin about four or five days after forty-eight to ninety-six hours on the road, when roughly handled; and when fermentation set up, the syrup was useless except for reboiling. In his opinion three or four days were ample for the syrup to reach Atlanta from Manassas. The syrup was of the best quality, and its market price was thirty-five or forty cents per gallon, and the firm had lost the amount sued for, $95. A witness introduced by the defendant testified that he was the agent of the Southern Railway Company at Helena, Ga., which was the junction point of the Southern Railway and the Seaboard Railway, coming from Manassas. He remembered the shipment of syrup from Hodges & Sons to the plaintiff. It was delivered by the Seaboard to the Southern at Helena on March 16, 1904, and the syrup left Helena on March 16. "He took exceptions on this shipment, only stating 'all leaking badly,' and the same was signed by himself and the agent of the Seaboard at Helena." The distance from Helena to Atlanta is 167 miles, and in making the trip it is necessary for a freight-car to be switched through the freight yard at Macon, necessitating considerable time; and the distance from Manassas to Helena is about 87 miles.

*Dorsey, Brewster, Howell & McDaniel* and *Lamar Rucker,* for plaintiff in error. *Moore & Pomeroy,* contra.

COBB, P. J. (After stating the foregoing facts.)

1-3. The propositions stated in the first three headnotes need no elaboration. See Civil Code, §2298; *Forrester* v. *Ga. R. Co.,* 92 *Ga.* 699; *Ga. R. Co.* v. *Forrester,* 96 *Ga.* 428; *Susong* v. *F. C. & P. R. Co.,* 115 *Ga.* 363; *Kavanaugh* v. *So. Ry. Co.,* 120 *Ga.* 62.

4. A railroad company receiving goods from a connecting carrier is generally not liable for damages to the goods when not caused by its own act. If it receipts for the goods as in good order, when in fact they are not in that condition, the law raises against it a conclusive presumption as to the condition of the goods. If it receipts for the goods without any statement as to their condition, the law raises a rebuttable presumption that they were in good order when received. On a receipt of the first character, a railroad company is required to settle with the consignee and look for reimbursement to the carrier upon whose line the damage occurred. In a receipt of the second character, the railroad company may defeat liability by showing that the goods were in a damaged condition

when received by it. If the character of the receipt given is, however, such that it clearly indicates an intention on the part of the carrier not to receipt for them as in good order, there is no presumption as to the condition of the goods when they were received, and the burden is upon the consignee to show that the damage occurred on the line of the defendant. . In this case the shipment was of barrels of syrup. The defendant received them from a connecting line, and in its receipt stated that the barrels were leaking badly. A shipment consisting of goods in barrels, such as syrup or the like, is certainly not in good order if the barrels are leaking badly, and an exception of this character in the receipt by the carrier will prevent any presumption arising that the goods were in good order. The law allows the carrier to protect itself against the presumption of law growing out of the terms of its receipt, or out of the silence of the receipt in reference to the condition of the goods. An exception by a carrier in a receipt for goods delivered to it, when the goods consist of liquids in barrels, that the barrels are leaking badly, ought certainly to be treated as a refusal on the part of the carrier to commit itself to the proposition that it received the goods as in good order. Barrels containing liquids can not be in good order when they are leaking badly.

5. Under the facts in the present case, the plaintiffs did not have the benefit of any presumption in their favor as to the condition of the goods at the time they were received by the defendant. The burden was upon the plaintiff to show the condition of the goods at the time the defendant received them, and that they were in a worse condition when delivered at the point of destination than they were when received, as a result of the negligence alleged against the defendant. The judge erred in the charge excepted to, and in refusing to charge as requested; and the verdict is unsupported by the evidence.    *Judgment reversed.* All the Justices concur.