LAKESIDE PACKING COMPANY, Respondent, vs. MINNE- APOLIS, ST. PAUL & SAULT STE. MARIE RAILWAY COMPANY, Appellant.

*March 12—June 22, 1925.*

*Pleading: Amendment of complaint to increase damages asked: Discretion of court: Carriers: Negligence of subsequent carrier: Liability of initial carrier.*

1. If the amount of a claim for damages specified in a complaint before its amendment be treated as an admission of the maximum liability claimed, it is not a conclusive or a final one. p. 356.
2. In an action against a railroad company for damage to a shipment of seed peas, where plaintiff's counsel was not informed of the full amount of the damage until shortly before trial, the allowance of an amendment increasing the claim was not an abuse of discretion, where there was no element of bad faith and the defendant, by a continuance on terms, was allowed ample time to ascertain the facts. p. 356.
3. Where the initial carrier was sued for damage to a shipment arising from negligent delay in delivery by a subsequent carrier, and no prior effort was made by defendant to make such carrier a party, the refusal, after judgment, of a motion to make it a party defendant and confine execution to it, was not an abuse of discretion. p. 357.

4. Under sec. 192.58, Stats., an initial carrier, having assumed liability by contract, has ample remedy against a subsequent carrier connected with the shipment, through whose actual negligence the harm is done.  p. 357.

APPEAL from a judgment and an order of the circuit court for Manitowoc county: MICHAEL KIRWAN, Circuit Judge.  *Affirmed.*

August 31, 1922, plaintiff delivered to the defendant at Medina Junction for shipment and delivery to itself as consignee at Manitowoc, both points being in Wisconsin, 1,077 bags of seed peas, loaded in one of defendant's cars and in a car of the Chicago & Northwestern Railway Company. Among the conditions of the straight bill of lading made out for each of such carloads was the following portion of section 2 thereof, to wit:

"Claims must be made in writing to the originating or delivering carrier within six months after delivery of the property. . . . Provided that if the loss, damage, or injury was due to delay or damaged while being loaded or unloaded, or damaged in transit by carelessness or negligence, then no notice of claim nor filing of claims shall be required as a condition precedent to recovery."

The shipment left September 1st, reached Manitowoc the 2d, the cars were transferred to the Chicago & Northwestern Railway Company on the 3d at a point a short distance from defendant's place of business, but were not delivered until September 14th.  During this period a strike was in progress by certain groups of the Chicago & Northwestern Railway Company employees.  Upon delivery the contents were found to be damaged.  Plaintiff notified the agents of the two railroads at Manitowoc and an inspection was made by defendant's representative.  Upon removal from the cars plaintiff determined that one lot of 198 bags was hopelessly ruined; 104 bags were, at defendant's request, shipped in November to its claim department; the remaining 775 bags were spread out and handled by plaintiff at its warehouse to save, if possible, all or some portion thereof, and after the customary germinating test in the spring of 1923 were distributed and

used for planting purposes. On October 4th plaintiff wrote to the Manitowoc agent of defendant reciting, among other things, that there were 104 bags that are a total loss, that the balance had been shipped to Two Rivers to be unloaded and spread out to dry to save as many as possible; that in such peas there is a considerable loss and it would be impossible to ascertain just what the loss would be until after handling, and concluding: "We wish also to notify your line that it is our intention to file claim for the loss in this shipment as soon as loss can be ascertained." On November 2d the 104 bags were shipped to defendant's claim department at St. Paul pursuant to its instructions, and bill of $832 sent for the same. On January 4, 1923, a claim was sent to defendant for loss due to overheating on the two carloads of peas, referring to the 104 bags shipped to the claim department and the 198 bags on hand at Manitowoc subject to its order. These two items at seven and one-half cents per pound aggregated $2,333.32, to which was added a charge of $31.20 for the 104 bags in which the peas were shipped to the claim department, a total claim of $2,364.52. The claim was inclosed in a letter of the same date stating: "This claim is for the full amount of the damage and includes the $832 which was the estimate charged for the 104 bags shipped to the claim department. . . . See what you can do to have this claim paid promptly."

On February 9, 1923, in response to a letter from defendant, plaintiff gave the weights in the two cars of the damaged peas as the number of pounds specified in the bill of January 4th, *supra,* and also stating: "It was impossible, due to having to reconsign these cars to Two Rivers and spread the peas on the floor at Two Rivers, to keep an actual count of the damage in each car, but believe these figures are approximately correct."

On June 4, 1923, plaintiff wrote for information as to the prospect of an immediate settlement on the claim. On June 26, 1923, this action was commenced by the service of a summons and a complaint verified by plaintiff's secretary. This complaint recited, among other things, the delivery of

the entire quantity of seed peas at Medina Junction for delivery to plaintiff at Manitowoc; that defendant negligently furnished to the plaintiff cars that were leaky and with defective roofs and walls, by reason whereof the peas were damaged. It also alleged that the defendant further failed to perform its undertaking in that it failed to deliver said seed peas until September 12th when they should have been delivered within two or three days. That by reason of the neglect and failure to so deliver within a reasonable time the peas became heated and damaged and a large part thereof valueless, to plaintiff's damage $2,364.52 (this being the amount specified in the bill of January 4, 1923, *supra*).

The cause first came on for trial January 31, 1924. Plaintiff's attorney then moved to amend the complaint by inserting an allegation in the last paragraph thereof, to wit: "and by reason of the defective cars furnished," and also to increase the prayer for damages to $7,500. This was later during the same day increased to $8,578.65. The grounds stated by plaintiff's counsel were that in framing the complaint he took the amount as given him by the officers of the company and that in preparing for trial ten days or so before the case was called he first ascertained that the full amount of damages had not been covered. Over defendant's objection this amendment was finally permitted by the court, and then, upon the ground that such amendment was a surprise, the defendant was allowed a continuance for the term upon the plaintiff paying $10 together with the fees for defendant's witnesses then in attendance. Such costs, amounting to $158.38, were received by the defendant on March 10th.

The case was again called for trial June 6, 1924, and after the jury was impaneled the defendant moved the court that the amendment allowed at the preceding term be now disallowed, stating as the grounds therefor that the service of the verified complaint specifying the sum therein as the amount of damages sustained and the service thereof upon the defendant and the failure to move for any amendment until a number of months thereafter constituted a formal and binding admission, and that the plaintiff could not there-

fore properly claim any right to amend and was not entitled to have such amendment.

The court stated that the matter had been passed upon in January and that at that time, upon defendant's suggestion of time being needed further to investigate the case, the continuance had been allowed. Defendant's counsel then cited *Berger v. Abel & Bach Co.* 141 Wis. 321, 124 N. W. 410, as authority to the effect that the plaintiff had no right to the amendment allowed in January. The bill of exceptions contains the statements of counsel and court with regard to the amendment both at the hearing in January and at the time of the trial, but no suggestion appears to have been made by defendant's counsel on either occasion that it was impossible to ascertain the facts as to the 775 bags of peas, for damages to which the amendment was allowed, and which had been distributed for planting purposes in the spring of 1923.

After a lengthy trial the jury by special verdict found that the cars furnished were not defective; that the seed peas were in good condition when loaded; that four days was a reasonable length of time for transportation and delivery of such shipment; that the delay in transportation and delivery caused damage to the peas by their becoming heated in the cars; that such delay was a proximate cause of the damage; that the delay was not caused by the strike then in force by the employees of the Chicago & Northwestern Railway Company; that under the circumstances and conditions then existing with reference to the strike the Chicago & Northwestern Railway Company did not exercise reasonable care and diligence to deliver the peas to plaintiff within a reasonable time; that the market value per pound of the peas if delivered at Manitowoc in their condition on leaving Medina Junction would be seven and one-half cents per pound; that there was no value to such at the time of the delivery either as to the 104 bags returned to defendant, the 198 bags retained by plaintiff, or the remaining 775 bags.

Thereafter the court directed judgment in favor of the plaintiff for $9,938.17, the entire amount of peas at the value

fixed by the jury, less a certain small credit, and which was still in excess of the amended prayer for relief, and for which excess plaintiff had moved to have its complaint amended to conform to the proof.

Defendant then made a showing that it had on January 11, 1924, made formal tender of the defense of the action to the Chicago & Northwestern Railway Company, the connecting carrier; on May 21, 1924, it notified that company of the amendment made on January 31st and the continuance of the case to June, 1924; and on September 26, 1924, after the entry of judgment on August 15, 1924, it tendered the judgment for payment to the Chicago & Northwestern Railway Company and was notified on December 6th that such railroad would refuse to pay the judgment or assume any responsibility in respect thereto, although· at its request defendant's counsel had obtained an extension of time for serving the bill of exceptions.  Upon such showing defendant obtained an order to show cause staying the proceedings by plaintiff and requiring the Chicago & Northwestern Railway Company to show cause why it should not be made a party defendant and that execution for the satisfaction of such judgment should be restricted to that railway.  Such motion was denied, and from the judgment and order defendant has appealed.  ·

For the appellant there was a brief by *Hayes, Sawyer & Sondel* and *Francis A. Darnieder,* attorneys, and *W. A. Hayes,* of counsel, all of Milwaukee, and oral argument by *Mr. Hayes.*

For the respondent there was a brief by *Hougen, Brady & Meyer* of Manitowoc, and oral argument by *A. L. Hougen.*

The following opinion was filed April 7, 1925:

ESCHWEILER, J.  The defendant was notified promptly upon the arrival of the two carloads of peas that damages would be claimed.  It had ample opportunity to, and did, inspect the entire shipment and knew of the disposition then made.  The statement rendered and the complaint as verified in June, 1923, each included damages to the 104 bags shipped

356    SUPREME COURT OF WISCONSIN. [June

Lakeside P. Co. v. M., St. P. & S. S. M. R. Co. 187 Wis. 350.

to defendant's claim department, and the 198 bags which at the first inspection had been sorted out as beyond question ruined. The prior correspondence and the verified complaint showed that any possible loss to the 775 bags which had been handled and treated at the warehouse and distributed to the farmers for planting in the spring of 1923 was not included in the demand then being made.

Through oversight or mistake on the part of plaintiff, but with no element of bad faith, the possible damage to the 775 bags was not presented to plaintiff's counsel at the time of the preparation of the complaint nor until shortly before the trial in January, 1924. While the amount as then specified in the complaint might be treated as an admission by plaintiff as to the maximum liability, it was not a conclusive and final one. The plaintiff had but one cause of action for the damage done to this entire shipment and could not have split up the same into two causes of action. In that situation the court was confronted with the alternative of either denying the plaintiff any relief whatsoever for the damage done to the 775 bags because a denial of the motion to amend would have been a denial of a remedy for such damage, or to allow the amendment granting the defendant ample opportunity to ascertain the facts with reference to the enlarged demand before compelling it to proceed to trial and allowing it substantial costs. Defendant had opportunity for six months to ascertain the facts and no showing was made to the court below nor here that it was foreclosed by reason of the lapse of time from any defense that it might have had to plaintiff's claim or amended claim. Defendant evidently availed itself of the opportunity to ascertain the facts as to the 775 bags of peas and offered testimony on the trial as to the condition of such peas at the time they were delivered to some of the farmers for planting in the spring of 1923.

The plaintiff was bound to minimize the loss so far as it reasonably could and no contention can be made that the plaintiff's efforts to handle, preserve, and use the 775 bags in the spring of 1923 did not constitute a reasonable, proper, and good-faith attempt to so reduce the loss. There was

Lakeside P. Co. v. M., St. P. & S. S. M. R. Co. 187 Wis. 350.

therefore no abuse of judicial discretion in granting the amendment.

Defendant further contends that the court should have granted its motion, after the entry of judgment, to make the Chicago & Northwestern Railway Company a party defendant and alone subject to execution.

Under the verdict of the jury as approved by the trial court the entire damage arose by failure of the Chicago & Northwestern Railway Company, the connecting carrier, to make a reasonably prompt delivery after it had received the shipment from the defendant, the initial carrier. The defendant gave prompt notice to the Chicago & Northwestern Railway Company of defendant's claim that the liability was that of the Northwestern Company rather than of the defendant, and allowed the situation in that regard, at least so far as the plaintiff was concerned, to remain that way until after trial, making no effort from the commencement of the action in June, 1923, and the formal tender of defense in January, 1924, or until December, 1924, to make the Chicago & Northwestern Railway Company a party defendant to the record. No abuse of discretion appears in the trial court's refusing to delay enforcement of plaintiff's established right to compensation for its loss while defendant attempts to collect from another carrier. Defendant having assumed by contract under our statute the liability that is attached by present law to an initial carrier, it has ample remedy against any subsequent carrier connected with the shipment and through whose actual negligence the harm is done. Sec. 192.58, Stats.; *Feelyater v. C., M. & St. P. R. Co.* 178 Wis. 362, 190 N. W. 193.

We find no error in the record.

*By the Court.*—Judgment and order affirmed.

A motion for a rehearing was denied, with $25 costs, on June 22, 1925.