TRADEWELL, Respondent, vs. CHICAGO & NORTHWESTERN RAILWAY COMPANY, Appellant.

*May 16—June 4, 1912.*

*Carriers: Failure to deliver goods: Action by consignee: Contract limiting liability: Action against initial or connecting carrier? Evidence: Sufficiency: Witnesses: Competency: Wife as agent of husband.*

1. Proof of delivery of a box of goods to the initial carrier in good condition and defendant's admission in its answer that it received the same as a connecting carrier, together with evidence that it was delivered by defendant at plaintiff's residence in his wife's absence, and that on her return she found it in an empty condition and bearing evidence that some of the boards had been removed and replaced, is *held* to make a sufficient *prima facie* showing of defendant's failure to deliver the goods.

2. The general rule is that the right of action for failure of a carrier to deliver goods received for transportation is *prima facie* in the consignee.

3. Where a wife shipped goods consigned to her husband and testified that he was the owner, and no issue of ownership was raised by the answer, a finding of ownership in the husband was sustained by sufficient evidence.

4. Proof that plaintiff's wife was in possession of goods consisting in part of articles of clothing made by her from materials purchased as his agent, and all owned by him, which goods she delivered to a carrier in another state consigned to plaintiff -in Wisconsin, shows her agency sufficiently to sustain the admission of her testimony both as to the circumstances of the shipment and as to the value of the goods.

Tradewell v. Chicago & N. W. R. Co. 150 Wis. 259.

5. Upon a shipment of goods by plaintiff's wife as his agent a bill of lading was delivered to her containing the entry "Rel. val. $10," meaning that the value was limited to $10 per hundred pounds. As soon as she discovered this clause written therein she sent her brother to the office of the carrier to have the value placed at $100, but the latter's agent said it was unnecessary. *Held*, that there was no agreement limiting the value to $10, and plaintiff was entitled to recover $85, the real value of the goods.

6. The federal statute (34 U. S. Stats. at Large, 595, ch. 3591) which gives a right of action, in all cases of through shipments, against the initial carrier, does not take away the right of action theretofore existing against a connecting carrier.

WINSLOW, C. J., and MARSHALL and BARNES, JJ., dissent.

APPEAL from a judgment of the circuit court for Langlade county: JOHN GOODLAND, Circuit Judge. *Affirmed.*

This is an appeal from a judgment in favor of the plaintiff resulting from loss of shipment in transit. The complaint alleges that the plaintiff delivered to the Southern Pacific Railway Company, at Santa Anna, California, a box of household goods consigned to *E. S. Tradewell* at Antigo, Wisconsin, to be forwarded by freight; that at the time plaintiff paid to said railway company the sum of $2.95 as freight charges and took a receipt therefor; that said initial carrier agreed and undertook to safely carry said goods over its line and such other lines as might be necessary to the city of Antigo, Wisconsin, and there deliver the same to plaintiff; that in course of transportation said box of goods was delivered to the defendant, and said defendant for a consideration undertook and agreed with plaintiff to safely carry the goods over its line and deliver them to plaintiff; that it failed to safely carry and deliver said goods; and that the goods were of the value of $85.

The defendant answered admitting that the box of goods was received by it in its capacity as common carrier and transported, carried, and handled as such common carrier under a written contract by which the value of the goods was

agreed to be not more than $10 per hundred weight, and that the liability of the defendant was in any event limited to the declared value of $10 per hundred weight; that the plaintiff had notice of defendant's tariffs, schedules, and classifications relating to shipments; that by said tariffs, schedules, and classifications it is provided that the rate or tariff for shipping household goods of the value of $10 per hundred weight should be $3.15 per hundred weight, and where the value exceeded $10 per hundred weight an addition of fifty per cent. should be made to the rate per hundred pounds, and where no value per hundred pounds was agreed upon an addition of fifty per cent. should be made to the rate per hundred pounds; that the plaintiff's property was shipped at the rate and classifications provided where the declared value was not in excess of $10 per hundred pounds; that the weight of the shipment was ninety pounds. The answer denied all other allegations of the complaint. A jury was waived and the court found:

1. That on the 31st day of May, 1910, there was delivered to the Southern Pacific Railway Company at Santa Anna, California, on behalf of plaintiff, a box of household goods consigned to *E. S. Tradewell,* Antigo, Wisconsin, to be forwarded by freight.

2. That the goods were safely, securely, and firmly packed (enumerating said goods).

3. That at the same time and place the wife of plaintiff paid said Southern Pacific Railway Company the sum of $2.85 as freight charges on said shipment and took a receipt therefor.

4. That in consideration of the freight so prepaid said Southern Pacific Railway Company agreed and undertook to safely carry said goods over its line and deliver the same to another carrier on the route to Antigo, Wisconsin.

5. That the Southern Pacific Railway Company in consideration of the sum of $2.85 carried said box of goods over

its lines and delivered the same at the end thereof to a connecting carrier to be transported to Antigo, Wisconsin.

6. In the course of transportation said box and the goods were delivered to the defendant company.

7. That the said defendant company received said box and the goods from one of the connecting carriers and handled, shipped, and transported said box and goods as a common carrier.

8. That the defendant company failed to deliver at Antigo, Wisconsin, the articles (enumerating them).

9. That the defendant has not received any of the articles shipped to him as above set forth and described in finding No. 8.

10. That the goods described were of the value of $85.

And as conclusions of law the court found that the defendant company is liable to plaintiff in the sum of $85 for failure to deliver said goods. Defendant excepted to the findings of fact and conclusions of law. Judgment was entered for plaintiff, from which this appeal was taken.

For the appellant there was a brief by *William G. Wheeler,* attorney, and *Edward M. Smart,* of counsel, and oral argument by *Mr. Smart.*

*Roy C. Smelker,* for the respondent.

KERWIN, J. A preliminary question arises upon the face of the findings, as will appear from the statement of facts, which should be noticed. The ninth finding states that the "Defendant has not received any of the articles shipped to him." This is obviously a clerical error and should read, "Plaintiff has not received any of the articles shipped to him." The error is apparent from the fact that the other findings find that the defendant did receive the goods, and the answer admits it.

1. It is insisted that the court erred in finding that the defendant failed to deliver the missing goods. It is said that

the rule of liability of carriers as insurers is so strict and severe that the plaintiff should be held to a strict line of proof in establishing that the loss occurred during the custody of the carrier. It is also argued by counsel for appellant that the proof does not establish that the contents of the box may not have been taken from it while it was awaiting shipment. The answer admits the receipt of the box of goods by the defendant as a connecting carrier. The evidence shows that the box of goods was delivered for carriage to the initial carrier. The proof is sufficient to show that the plaintiff made a *prima facie* case of failure of defendant to deliver the goods. *Laughlin v. C. & N. W. R. Co.* 28 Wis. 204.

There is evidence that the box in question was delivered at the residence of plaintiff during the afternoon in the absence of Mrs. Tradewell; that she found it there in the evening; she saw it standing on end, pushed it over, and it seemed light; there was a hole in the box, but not large enough so the contents could have been taken out through it; that there were no other visible external signs of interference with the box, except that when it was opened it was found that the boards on the top of the box had been broken and the nails did not hold fast, which indicated it had been opened. Mrs. Tradewell testified to the articles lost as found by the court below. The defendant offered no evidence. We think the evidence sufficient to support the finding that defendant failed to deliver the missing goods.

2. It is argued that there was not sufficient proof of ownership or privity with the contract of shipment. The plaintiff, consignee, is the husband of the person who shipped the goods, and the bill of lading names him as consignee. Counsel for appellant says that the undisputed evidence is that Mrs. Tradewell is the owner of the property. Mrs. Tradewell testified that the plaintiff, her husband, was the owner of the goods. Moreover, no issue of ownership was raised by the answer and the complaint alleges that the plaintiff is the con-

signee.   The general rule is that the right of action for damages is *prima facie* in the consignee.   3 Hutchinson, Carriers, (3d ed.) sec. 1311, p. 1558.   There is no proof in the present case to overcome the *prima facie* case made by the pleadings and the evidence.   The wife of plaintiff consigned the goods to him and admitted on the trial that they belonged to him, and the court found for plaintiff upon sufficient evidence on this point.

3.  It is further assigned as error that the wife of plaintiff was permitted to testify in his favor without proof of agency. The established facts showed the agency of the plaintiff.   She was in possession of the goods and acted as agent of plaintiff in shipping them.   The evidence shows that she acted as agent of plaintiff, not alone in shipping the goods to him as consignee, but in purchasing the material and making up the garments included in the articles lost.   The evidence in this case is ample to raise a presumption that in the acts performed by the plaintiff's wife respecting the shipment of the goods she acted as his agent.   *Savage v. Davis,* 18 Wis. 608; *O'Conner v. Hartford F. Ins. Co.* 31 Wis. 160; *Pickering v. Pickering,* 6 N. H. 120.

4.  It is contended that the court erred in not holding that liability should be limited to the sum of $10 under the release valuation clause contained in the bill of lading.   It contained the following: "Rel. val. $10."   Appellant relies upon *Ullman v. C. & N. W. R. Co.* 112 Wis. 150, 88 N. W. 41; *Hart v. Pennsylvania R. Co.* 112 U. S. 331, 5 Sup. Ct. 151. But the facts in this case clearly take it out of the rule of the above cases.   Counsel for appellant say, "It is conceded that both the consignee and Mrs. Tradewell understood that this limited the value to $10."   We do not so understand the record.   The defendant introduced no evidence upon this point. The evidence is that as soon as the agent of plaintiff discovered the valuation clause written in the bill of lading she immediately objected to it and sent her brother to the depot to

have the valuation placed at $100. When her brother at her request went to the agent of defendant to have the valuation changed, the agent said it was unnecessary. So it cannot be said upon the evidence that there was an agreement between plaintiff and defendant that the valuation should be limited. *Abrams v. M., L. S. & W. R. Co.* 87 Wis. 485, 58 N. W. 780; *Judson v. Western R. Corp.* 6 Allen, 486.

5. It is also assigned as error that the court found the value of the property lost $85, for the reasons, first, that the testimony of the plaintiff's wife should not have been received, and second, that the values are too high. The wife of plaintiff having charge of the shipment as agent of her husband, and a part of her duty in that regard being to agree upon value with the carrier, she was competent to testify as to value of the articles shipped. It is said that the value put upon the goods by Mrs. Tradewell is too high, but no evidence was offered by defendant, so we think the finding on this point is supported by the evidence.

It was suggested upon the argument that the late federal act known as the Carmack amendment to the Hepburn bill limits right of action to the initial carrier. The rule has been laid down in this court that recovery may be had against the last carrier. *Stolze v. A. A. R. Co.* 148 Wis. 205, 134 N. W. 376; *Laughlin v. C. & N. W. R. Co.* 28 Wis. 204. We think the rule established by this court, that action may be maintained against the last carrier, is still in force and not abrogated by the Carmack amendment. The federal act provides:

"That any common carrier, railroad, or transportation company receiving property for transportation from a point in one state to a point in another state shall issue a receipt or bill of lading therefor and shall be liable to the lawful holder thereof for any loss, damage, or injury to such property caused by it or by any common carrier, railroad, or transportation company to which such property may be delivered or over whose line or lines such property may pass, and no

contract, receipt, rule, or regulation shall exempt such common carrier, railroad, or transportation company from the liability hereby imposed: Provided, that nothing in this section shall deprive any holder of such receipt or bill of lading of any remedy or right of action which he has under existing law.

"That the common carrier, railroad, or transportation company issuing such receipt or bill of lading shall be entitled to recover from the common carrier, railroad, or transportation company on whose line the loss, damage, or injury shall have been sustained the amount of such loss, damage, or injury as it may be required to pay to the owners of such property, as may be evidenced by any receipt, judgment, or transcript thereof." 34 U. S. Stats. at Large, 595, ch. 3591; *Atlantic C. L. R. Co. v. Riverside Mills,* 219 U. S. 186, 31 Sup. Ct. 164.

We find no prejudicial error in the record.

*By the Court.*—The judgment is affirmed.

The following opinion was filed June 17, 1912:

Winslow, C. J. (*dissenting*). The only proof of the value of the goods was the general statement of the wife, received against objection to its competency, that they were worth $85. The well established principle is that when the wife has acted as agent of her husband she may testify as a witness for him with regard to any act done by her, or fact transpiring in the course of her agency and within its scope. *Chunot v. Larson,* 43 Wis. 536; *O'Conner v. Hartford F. Ins. Co.* 31 Wis. 160; *Goesel v. Davis,* 100 Wis. 678, 76 N. W. 768. As to any general fact disconnected with her representative character, she is incompetent to speak as a witness. *O'Conner v. Hartford F. Ins. Co., supra.* It has not been possible for me to see how the general question as to the value of the goods can be considered as being a fact in any way connected with her representative character as the agent of her husband to make the shipment.

I find no evidence in the case showing that the railroad company which received the goods for shipment was ever asked to change the valuation fixed in the receipt to $100. The utmost shown by the evidence is that Mrs. Tradewell's brother took the book to the freight office and received the receipt with the valuation of $10 written on its face, that when he delivered the receipt to Mrs. Tradewell she read it and asked him to have the valuation changed, that he took it to the agent and told him he wanted the valuation changed, and the agent said it was not necessary, and that he then took the receipt. It nowhere appears, so far as I can ascertain, that any request to change the valuation to $100 or any other definite sum was ever made. In this state of the evidence I am unable to perceive how it can be said that the effect of the valuation clause has been changed.

MARSHALL and BARNES, JJ. We concur in the foregoing dissenting opinion by Mr. Chief Justice WINSLOW.